UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80577-CIV-MIDDLEBROOKS/BRANNON

MARY SUSAN PINE, et al.,

    Plaintiffs,

v.

CITY OF WEST PALM BEACH,
FLORIDA, et al.,

    Defendants.
_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE comes before the Court upon Motion by Plaintiffs Mary Susan Pine and Marilyn Blackburn (collectively, "Plaintiffs") for Preliminary Injunction ("Motion") (DE 3) filed on June 6, 2013. Plaintiffs challenge Defendant City of West Palm Beach's ("City") enactment and enforcement of Ordinance No. 4336-11 (Code § 34-38) ("Ordinance) regulating noise around health care facilities. The City filed its Response in Opposition to the Motion (DE 32) on July 15, 2013. Plaintiffs filed their Reply in Support of the Motion on August 1, 2013. (DE 47). Both Parties filed Supplementary Filings of Evidentiary Material for the Preliminary Injunction Hearing and oral arguments were held on October 18, 2013. I have reviewed the entire record in this matter and I am otherwise fully advised in the premises.

### I.    BACKGROUND

Plaintiffs are a part of a group of individuals who assemble outside of the Presidential Women's Center ("Clinic")[1] to protest against abortions and to offer information about

---

[1] The Clinic is a West Palm Beach health care facility that offers pregnancy-related services, including abortions, to its patients.

1

alternatives to abortion to the women entering the Clinic. The City is a municipal corporation existing under the laws and Constitution of the State of Florida.

The instant matter involves an Ordinance the City enacted in response to public comments regarding the need for legislation to address the impact amplified sounds have on patients. The Ordinance, which creates a quiet zone around health care facilities, has been amended several times since its initial codification. On September 26, 2005, the Ordinance read:

> (a) Except as provided under section 34-39 of this article, no person shall, on any public street or sidewalk, or park, use, operate or play any radio, phonograph, stereo set, tape or CD play, television, sound amplifier, or other electronic audio device that produces or reproduces amplified sound, at a level that is plainly audible at a distance of more than ten feet from the sound source.
>
> (b) No person shall produce, cause to be produced, or allow to be produced by any means, any unnecessary noise or amplified sound, operate or play any radio, phonograph, stereo set, tape or CD player, television, sound amplifier or other electronic audio device that produces or reproduces amplified sound on any public street or sidewalk within 100 feet of any portion of a building housing a health care facility or any other institution reserved for the sick or infirmed, provided that the public streets or sidewalks adjacent to such facilities shall be clearly marked by conspicuous signs . . . .

Ordinance No. 3867-05. After the Ordinance was challenged in *Pine v. City of West Palm Beach*, Case No. 9:04-cv-80123 (S.D. Fla. 2007) (hereinafter, "*Pine 2007*")[2] and *Halfpap v. City of West Palm Beach*, 2006 WL 5700261 at *26-28 (S.D. Fla. 2006),[3] the City revised the Ordinance in 2008. The City expanded the ban on amplified sound to include private property

---

[2] In the *Pine 2007* case, the Court held that "by prohibiting expression amplified to a level even quieter than most normal human activity, without some justification for singling out that form of expression, the City has failed to narrowly tailor Section 34-38(a)." Because the City "enact[ed] a complete ban on amplified sound, without reference to whether that sound is actually causing a disturbance, the City has failed to narrowly tailor said regulation," the *Pine 2007* court permanently enjoined the City from enforcing the Ordinance. *Id.* at *30.
[3] In *Halfpap*, this Court declined to enjoin the Ordinance, but noted the uncertainty of what constitutes "unnecessary noise" and the discrepancy between banning amplified sound on public streets and sidewalks, yet allowing it on private property.

2

and provided that the ban applied to health care facilities within the quiet zone. In addition, the City repealed subsection (a) of the 2005 Ordinance.

On March 7, 2011, the City amended the Ordinance a final time as follows:

(a) *Purpose*. The purpose of these regulations is to create an area surrounding health care facilities that is quiet and free from shouting or other amplified sound.

(b) No person shall shout or cause to be produced, or allow to be produced, by any means, any amplified sound, including a loudspeaker, drum, radio, phonograph, stereo set, tape or CD player, television, sound amplifier, or other electronic audio instrument or device that produces or reproduces amplified sound on any public street or sidewalk or from private property within 100 feet of the property line of a property housing a health care facility or any other institution reserved for the sick or infirmed, provided that the public streets or sidewalks adjacent to such facilities shall be clearly marked by conspicuous signs identifying those areas . . . . Any health care facility that identifies the facility as being located in a quiet zone in accordance with subsection (c) below shall be subject to the same limitations on amplified sound described in this section within 100 feet of the property line of a property housing such health care facility.

Ordinance No. 4336-11, § 34-38.

Since the City had heard testimony from medical professionals during discussions of the Ordinance that amplified noise caused increased blood pressure, blood flow, and heart rate to patients, the revised Ordinance included an explanation of its purpose: to reduce noise pollution around health care facilities. In addition, the Ordinance includes the City's findings that patients subjected to loud noises were at risk for adverse medical consequences. *See* Ordinance No. 4336-11, § 34-32.

In addition, the Ordinance included shouting as one of the banned actions, and use of a loudspeaker and a drum as banned amplified sound, and expanded the quiet zone to 100 feet of the property line, as opposed to 100 feet of the building. An "amplified sound" under the Ordinance is "a sound augmented by any electronic or other means that increases the sound level or volume." *Id.* § 34-34. "Shouting" means "[a]ny reasonably

3

loud, boisterous or raucous shouting in any residential area or within a quiet zone established pursuant to section 34-38 . . . ." *Id.* § 34-35(12). Although the Ordinance banned amplified sound and shouting in the quiet zone, individuals are free to picket, distribute literature, and speak to patients within the quiet zone.

The Clinic, as well as St. Mary's Medical Center, has invoked the protections of the Ordinance and has erected signs designating the area 100 feet surrounding the property line as a quiet zone.[4] In September 2010, Ms. Pine was cited under an older version of the Ordinance for using a bullhorn within the Clinic's quiet zone and she had to pay a fine of $250.00. On June 6, 2013, Plaintiffs filed the instant Motion seeking to have the Court enjoin the City from enforcing the Ordinance, which they contend violates their constitutional rights. The Court held oral arguments on October 18, 2013.

## II. LEGAL STANDARD

A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (citing *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam)); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). In the First Amendment context, the question is reduced to the question of whether the plaintiff is likely to succeed on the merits because: (1) the loss of First Amendment freedoms is presumed to constitute irreparable

---

[4] The Ordinance requires each health care facility to erect and maintain signs in some conspicuous place to notify individuals that the area surrounding the facility is a "Quiet Zone." Ordinance No. 4336-11, § 34-38(c). The signs must be placed on every street, avenue, or alley upon which the facility is situated. *Id.*

4

harm, with no adequate remedy at law;[5] and (2) governmental compliance with the First Amendment always serves the common good. *Halfpap*, 2006 WL 5700261 at *29-30 n.48. "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to all four elements." *Davidoff & CIE, SA v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001) (quoting *Siegel*, 234 F.3d at 1176).

### III. LEGAL ANALYSIS

#### A. *Substantial Likelihood of Success*

I note at the onset that I recognize the moral, religious, and political concerns involved in the legal issues in this matter. Nevertheless, I must focus only on the legal issues presented in determining instant Motion. In order for Plaintiffs to show a substantial likelihood of success on the merits, the Court must find that the Ordinance does not impose a reasonable restriction on the time, place, or manner of protected speech in a public forum. A time, place, or manner restriction is appropriate "provided [(1)] the restrictions are justified without reference to the content of the regulated speech; [(2)] that they are narrowly tailored to serve a significant governmental interest; and [(3)] that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks omitted).

---

[5] In *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990), the Eleventh Circuit noted:

> The only area of constitutional jurisprudence where we have said that an on-going violation constitutes irreparable injury is the area of first amendment and right of privacy jurisprudence. . . . The rationale behind these decisions was that chilled free speech and invasions of privacy, because of their intangible nature, could not be compensated for by monetary damages; in other words, plaintiffs could not be made whole.

896 F.2d at 1285.

5

(1)    *Content Analysis*

In considering whether a restriction is content-neutral or content-based, I must determine "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791. A content-neutral restriction receives intermediate review, while a content-based restriction undergoes the highest level of review. Here, the City Ordinance does not refer to any specific content it seeks to restrict or regulate. The purpose of the Ordinance is to protect patients seeking health care services. The facts on the record do not indicate that the City enacted and sought to limit Plaintiffs' speech based on their content. Furthermore, for the purposes of the instant Motion only, Plaintiffs concede that the Ordinance is content-neutral. Therefore, I find that the Ordinance is content-neutral.

(2)    *Narrowly Tailored*

The right to use sound amplification is protected by the First Amendment. *Saia v. People of the State of New York*, 334 U.S. 558 (1948). However, this right is not absolute; "when the exercise of First Amendment rights infringes on legitimate state interests, a city may enact narrowly drawn statutes regulating the time, place, and manner of such activities." *Reeves v. McConn*, 631 F.2d 377, 382 (5th Cir. 1980) (citing to *Saia*, 334 U.S. at 562). The ordinance the government enacts must be tailored to address the activities that affect, or threaten to affect, the legitimate state interest. *Id.* at 384. In balancing a legitimate interest against infringing First Amendment rights, courts should be mindful that the preferred position is to keep the freedoms of the First Amendment. *Id.* at 382. When interpreting a law restricting constitutional rights, the Court has discretion and an obligation to do so in such a manner as to avoid constitutional defects without striking the law. *Halfpap*, 2006 WL 5700261 at *26 n.50 (citing *Am. Power & Light Co. v. Sec. and Exch. Comm'n*, 329 U.S. 90, 108 (1946) ("Whenever possible, [laws] must

6

be interpreted in accordance with Constitutional principles."); *Am. Booksellers v. Webb*, 919 F.2d 1493, 1500 (11th Cir.1990)).

The government has a substantial interest in protecting its citizens from unwelcome noise. *See Ward*, 491 U.S. at 796; *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984) (hereinafter, "*Taxpayers for Vincent*"). This legitimate interest also exists when the government seeks to protect the area surrounding health care facilities from noise. Loud sounds can be harmful to a patient's care and recovery. Doctor Jay Trabin testified during the City's February 2, 2011 meeting that stressful noise pollution increases patient healing time and their need for anesthesia and sedation. (DE 69-2 at 7:23–8:11). Dr. Trabin affirmed that noise pollution is harmful to patients' medical care. *Id.* at 11:4-8. At the meeting, the City also noted that it had received testimony from medical professionals regarding the adverse effects of noise pollution on patient health at prior hearings on the Ordinance. (DE 68-10 at 21); (*see* DE 68-5-DE 68-7; DE 69-3 (transcripts of the hearings for prior versions of the Ordinance that include discussion of the health concerns the City sought to address)).

The Ordinance states in its Findings that "the use of sound amplification equipment creates loud and raucous noise that may, in a particular manner and at a particular time and place, substantially and unreasonably invade the privacy, peace, and freedom of inhabitants of, and visitors to, the city." Ordinance No. 4336-11, § 34-32(d). Furthermore, the Ordinance Findings noted that noise pollution causes and aggravates health problems and identified the City's substantial interest in establishing quiet zones around health care facilities. *Id.* § 34-32(a), (f).

To address this legitimate interest, the City passed the Ordinance, which bans shouting and all amplified sound on any public street or sidewalk and from private property within 100

feet of the property line of a property housing a health care facility. The enforcement of the quiet zone around health care facilities protects patients undergoing surgical procedures from enduring loud noises that may induce health complications. As it relates to the Clinic, the Ordinance protects women seeking pregnancy-related services at the Clinic from shouting and amplified sounds that may cause them harm.

Unlike its previous versions, the Ordinance is place-specific and does not apply citywide. The Ordinance limits its application to within 100 feet of the health care facility's property line.[6] The health care facility seeking to establish a quiet zone must erect and maintain signs on every street, avenue, and alley to give individuals notice of the location of the quiet zone. Establishing a quiet zone around a health care facility, here the Clinic, directly addresses the City's legitimate interest in protecting patients' exposure to noise pollution and health. In addition, although, Plaintiffs' contend that the Ordinance should be enjoined because it is not time-specific, many health care facilities are open twenty-four hours a day, seven days a week. Imposing a time limitation is neither feasible nor warranted. Therefore, in regards to place and time, I find that the Ordinance is not substantially broader than necessary to achieve the City's legitimate interest.

Plaintiffs also claim that the Ordinance is unconstitutional because it bans amplified sounds in a manner that is too broad. To support their position, Plaintiffs interpret the Ordinance to mean that individuals who use headphones to listen to sound emanating from an amplifier and those inside the quiet zone who use the radio, which is listed as an instrument that amplifies sound, violate the Ordinance. However, I disagree. Plaintiffs have failed to review the

---

[6] The City's Guidance for Application of Ordinance No. 4336-11, (DE 69-1 at 1), appears to be broader than the Ordinance, as written, allows. The Ordinance authorizes individuals to use amplified sound outside of the quiet zone. However, the Guidance indicates that law enforcement officers may cite individuals for Ordinance violations when they use amplified sound outside of the quiet zone if that sound may be heard within the zone. This discrepancy should be addressed accordingly.

Ordinance as a whole, and, instead have used Section 34-38 in isolation to make their arguments. Section 34-35 applies in conjunction with Section 34-38, which explains when use of radios and other sound amplifiers violate the Ordinance generally.[7] For example, use of a radio that "disturb[s] the peace, quiet and comfort of the neighboring inhabitants" or that is at a volume louder "than is necessary for convenient hearing" for voluntary listeners would violate the Ordinance. The use of headphones and the radio would not be a per se violation of the Ordinance. The Ordinance provides specific examples and explanations of the manner in which the Ordinance would be violated. Therefore, the examples that Plaintiffs cite to support their arguments are misplaced.

---

[7] Section 34-35 of the Ordinance provided examples of what "unreasonably loud, excessive, unnecessary or unusual noises," which included:

> (2) *Radios, televisions, phonographs, etc.* The using, operating, or permitting to be played, used or operated any radio receiving set, television set, musical instrument, phonograph, or other machine or device for the producing or reproducing of sound in such manner as to disturb the peace, quiet and comfort of the neighboring inhabitants, or at any time with louder volume than is necessary for convenient hearing for the person or persons who are in the room, vehicle or chamber in which such machine or device is operated and who are voluntary listeners thereto. The operation of any such set, instrument, phonograph, machine or device between the hours of 11:00 p.m. and 7:00 a.m. in such a manner as to be plainly audible at a distance of 100 feet from the building, structure or vehicle in which it is located shall be prima facie evidence of a violation of this section.
> (9) *Noises to attract attention.* The use of any drum, loudspeaker or other instrument or device for the purpose of attracting attention by creation of any unreasonably loud or unnecessary noise to any performance, show, sale, display or advertisement of merchandise or within a quiet zone established pursuant to section 34-38 below.
> (10) *Loudspeakers, etc.* The use or operation on or upon the public streets, alleys and thoroughfares anywhere in this City for any purpose of any device known as a sound truck, loud speaker or sound amplifier or radio or any other instrument of any kind or character which emits therefrom loud and raucous noises and is attached to and upon any vehicle operated or standing upon such streets or public places aforementioned or within a quiet zone established pursuant to section 34-38 below.
> (12) *Shouting.* Any unreasonably loud, boisterous or raucous shouting in any residential area or within a quiet zone established pursuant to section 34-38 below.

9

Since the Ordinance regulates shouting and amplified sound that are time, place, and manner specific and it addresses the activities that affect, or threaten to affect, the City's legitimate interest in patients' health, I find that the Ordinance is narrowly tailored.

(3) *Alternative Means Available*

When the government regulates speech in a content-neutral way, it does not have to enact a measure that is the least restrictive alternative; instead, the government must ensure that speakers have alternative channels of communication under the regulation. *See Taxpayers for Vincent*, 466 U.S. at 804-5. An unreasonable limit on alternate avenues of communication will be found unconstitutional. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986).

Here, alternative means to communicate remain available under the Ordinance. Plaintiffs may still employ other effective methods of communications. The Fifth Circuit in *Medlin v. Palmer*, 874 F.2d 1085 (5th Cir. 1989), found that an ordinance banning amplified speech within 150 feet of a hospital, nursing home, or any facility that provides outpatient surgical services, among other buildings, was constitutional. The plaintiffs in *Medlin* presented a similar argument as Plaintiffs: that bullhorns were necessary to reach the patients effectively. The *Medlin* court disagreed with the plaintiffs and listed several effective methods still available to the plaintiffs, including unamplified speech, displaying placards, and symbolic speech. It found that the 150 feet quiet zone did not impinge on alternate avenues of communication and refused to enjoin the ordinance.

Similarly to *Medlin*, Plaintiffs in this matter have alternative methods of communication still available under the Ordinance. For example, they are still free to talk, sing, hold up signs, and distribute literature to patients within the quiet zone. In fact, during the City's March 7, 2011 Meeting regarding the Ordinance, one protestor, Michelle Armstrong, stated that yelling

was not necessary for protectors to achieve their goal of educating women about their beliefs. (DE 69-2 at 22:3-23:15). The City made a concerted effort to point out during that meeting that the protestors would continue to have alternate methods of communicating with patients. Furthermore, Plaintiffs may still use amplified sound anywhere outside the quiet zone. That patients entering the Clinic chose to ignore them does not mean that Plaintiffs' right to communicate effectively is infringed or that the instant Ordinance is unconstitutional. I find that the City has enacted an Ordinance that leaves alternate avenues available to Plaintiffs to communicate with patients entering said health care facilities.

**B.** *Application of Ordinance*

Plaintiffs contend that even if the Court finds that the Ordinance as written does not violate their First Amendment rights, the City is enforcing the Ordinance only against them because of their pro-life viewpoint, while allowing similarly situated speakers to produce amplified sound within the quiet zone freely. The City argues that it is not aware of any other violators of the Ordinance and is not discriminating against Plaintiffs' viewpoint. The government may not regulate private speech or expression based on its substantive content or the message it conveys. *See Rosenberger v. Rector & Visitors of the Uni. of Va.*, 515 U.S. 819, 828 (1995). When the government engages in viewpoint discrimination, it limits speech that would otherwise be allowed, thereby violating the speaker's First Amendment rights. *Id.* at 830; *see also Good News Club v. Milford Central Sch.*, 533 U.S. 98, 106 (2001); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985); *Adler v. Duval Co. Sch. Bd.*, 206 F.3d 1070, 1081 (11th Cir. 2000) (en banc).

The City has not brought enforcement action for Ordinance violations against any other person or entity besides Plaintiffs. (DE 54-6 at 5-6). St. Mary's Medical Center has erected

signs notifying individuals that a quiet zone exists in the area surrounding its property line, yet the City has not issued any citations to individuals there. (DE 68-12). Plaintiffs argue that this fact demonstrates viewpoint discrimination. However, I disagree. Correlation does not mean causation. The City is not selectively enforcing the Ordinance against pro-life advocates. No other individuals are using bullhorns and other prohibitive amplifiers in established quiet zones, to the City's knowledge. Therefore, the City is not discriminating against Plaintiffs' viewpoint; the City is enforcing the Ordinance against those who violate it.

Plaintiffs note that the City has not enforced the Ordinance against the surrounding restaurants that use drive thru intercoms in the quiet zone or against the Clinic for its loudspeakers. However, neither example constitutes a violation under the Ordinance.

As to the restaurants' intercom system, there is a distinct different between the intercom systems used by the Wendy's and Pollo Tropical restaurants and an instrument used for amplification. The restaurants use their intercoms to allow employees and customers to communicate; the systems transmit sound. They do not increase the sound level or volume of the conversation, and, therefore, they do fit under the Ordinance's definition of "amplified sound" or "shouting." Further, while Plaintiffs claim in their extreme example that individuals who use a boom box at full volume in a quiet zone would not violate the Ordinance because the boom box is transmitting sound, their interpretation of the Ordinance is invalid. Such an action would likely be considered a noise violation under Section 34-35 of the Ordinance.

As to the Clinic's loudspeakers, the owner and operator of the Clinic, Mona Reis, provided an affidavit stating that she does "not have the ability to use the speakers as they are configured for use by Interface Security." (DE 68-3 at 2). Tyson Johns, the Vice President of Plano Operations for Interface, explained in his affidavit that the loudspeakers are part of the

Clinic's interactive security system. It is used to inform an unauthorized individual that he or she is on the Clinic's property and should leave. The security system is only used after hours. The Ordinance contains an exemption for burglar alarms such as the Clinic's security system. *See* § 34-40(5). The fact that the system is interactive and allows the monitor to communicate with the unauthorized individual does not invalidate the Clinic's exemption under the Ordinance.

Since the City is not enforcing the Ordinance only against Plaintiffs because of their viewpoint, I find that Plaintiffs are not substantially likely to prevail on their as-applied challenge.

### C.  *Vagueness*

Plaintiffs contend that the Ordinance should be enjoined because it is vague. Mathematical certainty is not to be expected when interpreting a law for vagueness. *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). A law should only be found vague if its terms are so indefinite that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). When determining whether a law is vague, the Court will look to "what the Ordinance as a whole prohibits." *Grayned*, 408 U.S. at 110 (citing *Estaban v. Cent. Mo. State Coll.*, 415 F.2d 1077, 1088 (8th Cir. 1969)).

As discussed previously, the Ordinance specifically outlaws shouting and amplified sound on public streets, sidewalks, and private property within 100 feet of a health care facility's property line. The facility must have signs notifying individuals of the quiet zone. The Ordinance's terms are understandable; it explains what is prohibited and where. It defines the terms in a manner that is not confusing or ambiguous. For example, "shouting" is "[a]ny reasonably loud, boisterous or raucous shouting in any residential area or within a quiet zone

established pursuant to section 34-38 . . . ." Ordinance No. 4336-11, § 34-35(12). And an "amplified sound" is "a sound augmented by any electronic or other means that increases the sound level or volume." *Id.* § 34-34. Furthermore, the Ordinance provides law enforcement officers with the conditions that must exist before they can enforce the Ordinance. Men of common intelligence would understand the Ordinance's meaning and would not differ as to its application. Therefore, I find that the Ordinance is not vague.

## IV. CONCLUSION

Since the City: (1) has enacted an Ordinance that is content-neutral, time, place, and manner specific to address that interest, and provides alternate avenues to communicate; (2) has not enforced the Ordinance in a viewpoint discriminatory manner; and (3) has enacted an Ordinance that is not vague, I find that Plaintiffs are not substantially likely to prevail on the merits of their First Amendment challenge. Therefore, for the foregoing reasons, I find that Plaintiffs have failed to satisfy all of the requirements to warrant preliminary injunctive relief against the City.

Accordingly, upon review of Plaintiffs' Complaint, Plaintiffs' Motion, and supporting submissions of both Parties, as well as the argument presented at the October 18, 2013 hearing, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Preliminary Injunction (DE 3) is **DENIED**.

It is further **ORDERED AND ADJUDGED** that the Court's October 9, 2013 Order (DE 60) staying discovery in this matter is **VACATED**. Trial in this matter is set during the two-week trial period commencing February 10, 2014. The Parties shall adhere to the following amended pretrial schedule, which shall not be modified absent compelling circumstances.

November 25, 2013   All discovery shall be completed.

December 12, 2013   All Pretrial Motions and Memoranda of Law shall be filed.

| | |
|---|---|
| January 13, 2014 | Joint Pretrial Stipulation shall be filed. Designations of deposition testimony shall be made. |
| January 27, 2014 | Objections to designations of deposition testimony shall be filed. Late designations shall not be admissible absent exigent circumstances. |
| February 3, 2014 | Jury Instructions or Proposed Findings of Fact and Conclusions of Law shall be filed. |
| February 5, 2014 | Status Conference/Calendar Call. |

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this 29 day of October, 2013.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record